IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHERRY S. LOSEE,<br><br>                    Plaintiff,<br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,[1]<br><br>                    Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 2:15-cv-226 DN BCW<br><br>Chief Judge David Nuffer<br><br>Magistrate Judge Brooke Wells |

This matter is referred to the undersigned in accordance with 28 U.S.C. 636 (b)(1)(B) from Judge David Nuffer.[2] Plaintiff Sherry Losee appeals from the denial of her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. The Court heard argument on the appeal.[3] Plaintiff was represented by Wendy Wheeler and Defendant was represented by Lynn Kiley. Having considered the parties' briefs, the administrative record and having heard oral argument the undersigned enters the following Report and Recommendation recommending that this case be remanded to the Commissioner.

## BACKGROUND[4]

Plaintiff, Sherry Losee who was born in January 1972, was in a motor vehicle accident that caused trauma to her neck leaving her with chronic neck symptoms.[5] Ms. Losee alleged

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Docket no. 16

[3] Docket no. 25.

[4] The parties set forth more fully the background of this case, including the medical history, in their memoranda. The court does not repeat this background in full detail here. The reader desiring a more extensive history is directed to the record and briefing of the parties.

disability beginning on May 1, 2001, which was later amended to March 31, 2011, the date of her application.[6] Ms. Losee claims disability based on degenerative disk disease of the lumbar spine, degenerative disk disease of the cervical spine, ruptured cervical disks, anxiety disorder and depressive disorder.[7] The pain she experienced from her neck and spine problems also contributed to her nausea, vomiting and migraine headaches.[8] An Administrative Law Judge (ALJ) held a hearing on January 29, 2013.[9] The ALJ issued a decision finding Ms. Losee not disabled on February 4, 2013.[10] The Appeals Council denied Plaintiff's request for review in April 2014 and this appeal followed.

At the hearing held on January 29, 2013, Plaintiff testified she was in a car accident in 2008. The pain that came from this accident caused her to be nauseous and often resulted in her vomiting uncontrollably.[11] Ms. Losee tried various therapies but they did not work very effectively. Eventually she had neck surgery, which "helped with a lot of the pain" but she still had concerns that she would return to her pre-surgery state.[12] On the day of the hearing Ms. Losee stated that she did feel nauseous and her fingers and thumb felt numb inhibiting her ability to grab.[13] Plaintiff testified that she could sit for 20 minutes before feeling nauseous.[14] And, she could sit, stand, and walk for 20 to 30 minutes at a time, but needed to change positions

---

[5] Tr. 219. Tr. refers to the transcript of the record and proceedings held before suit was filed in this Court.
[6] Tr. 608.
[7] Tr. 151-152.
[8] *Id.*
[9] Tr. 605.
[10] Tr. 16-29.
[11] Tr. 609, 611
[12] Tr. 614.
[13] Tr. 615.
[14] Tr. 615.

frequently.[15] In response to the ALJ's questioning, Ms. Losee said she could occasionally lift a gallon of milk and could lift a ream of paper more frequently.[16]

Ms. Losee testified that mental health treatment helped treat her anxiety but due to some circumstances, including problems with her ex-husband, she stopped treatment.[17] Ms. Losee stated that she had lots of panic attacks and tried to watch TV to get her mind off the pain and stress.[18]

Following Plaintiff's testimony, the ALJ questioned Ken Lister, the vocational expert (VE), and provided hypotheticals with various residual functional capacities.[19] The VE opined that someone with Plaintiff's residual functional capacity (RFC) could perform the jobs of call-out operator, charge account clerk, food and beverage order clerk, and surveillance systems monitor.[20]

After hearing all the evidence the ALJ issued a decision following the required sequential five-step evaluation process for disability determinations.[21] The ALJ found that Ms. Losee had the following severe impairments: back disorders, degenerative disk disease of the cervical spine, anxiety disorder and depressive disorder.[22] At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meet or medically equal a listing.

---

[15] Tr. 628-30.

[16] Tr. 631.

[17] Tr. 616-17.

[18] Tr. 620.

[19] Tr. 634-40.

[20] Tr. 638-40.

[21] See 20 C.F.R. § 416.920; *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (summarizing five step process).

[22] Tr. 28.

The ALJ specifically considered listing 1.04 disorders of the spine, 12.04 bipolar and related disorders and 12.06 anxiety and obsessive-compulsive disorders.[23]

Next, the ALJ found Ms. Losee had the RFC to perform the full range of sedentary, unskilled work with additional restrictions. These include *inter alia*: no standing or walking more than 20 to 30 minutes at one time with no more than 6 total hours in an 8 hour day; no sitting more than 20 to 30 minutes at one time; a need to change standing walking positions to be as comfortable as possible; work at a low stress level which means a low production level, "no working with the general public," only occasional contact with supervisors and co-workers, and only rare changes in a routine work setting; no work at more than a low concentration level; no work at more than a low memory level including reasoning at GED level of 3, math at 2 and language at 2; and work that involved "making only 'simple' work related decisions."[24]

At step four the ALJ found Plaintiff has no past relevant work.[25] The analysis then moved to step five where the ALJ considered Ms. Losee's RFC, the VE's testimony and other evidence in the record and found Plaintiff could perform other work in the national economy including food and beverage order clerk, charge account clerk, call-out operator and surveillance systems monitor. The ALJ reduced these jobs due to the additional limitations mentioned above.[26]

## STANDARD OF REVIEW

The Court reviews "the ALJ's decision only to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in

---

[23] *See* 20 C.F.R. pt. 404, subpt. P, App.1, § 1.04, §12.04, §12.06.

[24] Tr. 20-21.

[25] Tr. 27.

[26] Tr. 27-28.

the record."²⁷ "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."²⁸ It requires more than a scintilla, but less than a preponderance of evidence.

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all the evidence.²⁹ In reviewing the ALJ's decision the Court evaluates the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.³⁰ The Court, however, may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."³¹ Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.³² Further, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"³³

DISCUSSION

On appeal Ms. Losee raises four issues. First, she asserts the Commissioner failed to meet her burden at Step 5 by failing to provide substantial evidence that Plaintiff's RFC, as found by the ALJ, matches up to the jobs she allegedly can perform. Second, Plaintiff argues the ALJ "improperly required objective evidence to verify pain and other symptoms."³⁴ This includes the ALJ's failure to note in the record Plaintiff's numerous complaints of nausea. Third, Ms. Losee asserts the ALJ gave improper weight to the treating source opinions of Dr.

---

²⁷ *Madrid v. Barnhart*, 447 F.3d 788, 790 910th Cir. 2006).

²⁸ *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

²⁹ *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2000).

³⁰ *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

³¹ *Lax*, 489 F.3d at 1084 (citation omitted).

³² See *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

³³ *Lax*, 489 F.3d at 1084 (quoting *Zoltanski*, 372 F.3d at 1200).

³⁴ Opening brief p. 8, docket no. 19.

Derek Muse and Lewis L. Boone, LCSW.  And finally, the ALJ improperly determined Ms. Losee's credibility by specifically failing to inquire into the reasons why Ms. Losee could not continue mental health treatment.

During oral argument Plaintiff's counsel agreed that no further analysis in this case is necessary if the ALJ's specific limitation of "no working with the general public, and only occasional contact with supervisors and co-workers on the job"[35] precludes the jobs mentioned by the VE and cited to by the ALJ in step five.  The court finds the step five analysis to be dispositive in this case.

As set forth in the regulations,[36] at step five it must be determined whether a claimant is able to do any other work considering their RFC, age, education and work experience.  "If [a claimant] can make an adjustment to other work" then they are not disabled.[37]  If they cannot, then they are found disabled.  At step five the burden shifts from a claimant toward the Commissioner.  Once a claimant establishes that at step four they cannot return to their past relevant work "the burden shifts to the Secretary to show that the claimant retains the [RFC] to do other work that exists in the national economy."[38]  "The Secretary meets this burden if the decision is supported by substantial evidence."[39]  "Substantial evidence" requires "more than a scintilla, but less than a preponderance," and is satisfied by such relevant "evidence that a reasonable mind might accept to support the conclusion."[40]

---

[35] Tr. 21.

[36] *See* 20 C.F.R. § 404.1520(g), § 416.920(g).

[37] 20 C.F.R. § 404.1520(g).

[38] *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10ht Cir. 1993).

[39] *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

[40] *Id.* (quoting *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987)) (quotations omitted).

The ALJ found at step five that Plaintiff could perform other work including food and beverage order clerk, charge account clerk, call-out operator and surveillance systems monitor. The ALJ reduced these jobs by certain percentages due to additional limitations and the discrepancies between the job descriptions for these occupations found in the Dictionary of Occupational Titles (DOT) and Plaintiff's capacity for work.[41] Although this analysis goes a long way to help meet the ALJ's duty to resolve conflicts between the VE's testimony and the DOT, there is a failure in the ALJ's decision to account for the limitation of no working with the general public.[42]

On appeal the Government does not argue that Ms. Losee could perform the occupations of food and beverage order clerk and charge account clerk. The court agrees that these occupations would be precluded because based on the DOT both of these jobs require a fairly significant amount of contact with the public.[43] This is contrary to the ALJ's RFC limiting Ms. Losee to jobs that accommodate her need for "no working with the general public" and only occasional contact with supervisors and co-workers on the job. . . ."[44] What then remains are the jobs of call-out operator and surveillance systems monitor.

In *Clark v. Colvin*[45] a recent decision from another court in this circuit, the court found that the occupation of call-out operator required significant contact with people.[46] Although this

---

[41] Tr. 27-28.  The Dictionary of Occupational Titles is published by the Department of Labor and is one of several governmental publications from which the Commissioner takes "administrative notice of reliable job information." 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). Occupation descriptions in the DOT include a General Education Development ("GED") Scale composed of three components: (1) reasoning development; (2) mathematical development; and (3) language development. *See* DOT app. C, Components of the Definition Trailer, 1991 WL 688702

[42] *See* 20 C.F.R. §§ 404.1566, 416.966.

[43] *See* DOT § 209.567-014, 1991 WL 671794 (food and beverage clerk requiring significant contact with people), § 205.367-014, 1991 WL 671715 (charge account clerk requiring significant contact with people).

[44] Tr. 21.

[45] 2016 WL 1171153 at *3 (W.D. Okla. Feb. 26, 2016), report and recommendation adopted, No. CIV-14-1294-L, 2016 WL 1178807 (W.D. Okla. Mar. 23, 2016).

appears at odds with *Hackett v. Barnhart*,[47] after considering the DOT description, which includes using the telephone in multiple instances to contact subscribers, the undersigned finds it fails to accommodate Plaintiff's need to have "no working with the general public," and "only occasional contact with supervisors and co-workers on the job . . . ."[48] The court therefore rejects Defendants assertion that Ms. Losee can perform this occupation. The court now turns to the occupation of surveillance systems monitor.

Defendant argues that under the reasoning found in *Hackett v. Barnhart*,[49] Plaintiff is not precluded from performing work as a surveillance systems monitor even with her restrictions. In *Hackett* the plaintiff argued her RFC that included "avoid direct contact with the general public and have only occasional interaction with coworkers" precluded her from work as a surveillance system monitor. The Tenth Circuit rejected this argument. The court noted that this occupation had a people rating of 6, "which means that [it required] 'talking with and/or signaling people to convey or exchange information [and] giving assignments and/or directions to helpers or assistants.'"[50] The *Hackett* court found that based on this people rating and the DOT description contact with people is "rather limited." The court then found no conflict between the DOT and the ALJ's instructions to the VE that the plaintiff would be restricted to "no direct public contact" and thus affirmed the ALJ's decision as to that aspect of his analysis.

The *Hackett* decision does appear persuasive to the current analysis, but there is at least one important distinction in the ALJ's RFC here. In this case the ALJ precluded Ms. Losee from work "at more than a low stress level" which included "a low production level," "no working

---

[46] *See id.*

[47] 395 F.3d 1168 (10th Cir. 2014).

[48] Tr. 21.

[49] 395 F.3d 1168 (10th Cir. 2005).

[50] *Hackett*, 395 F.3d at 1175 (quoting DOT, Vol. II at 1006)).

with the general public," only occasional contact with supervisors and co-workers on the job and "the ability to deal with only rare changes in a routing work setting."[51] The description for a surveillance system monitor includes the need to monitor for crime: "Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: . . . ."[52] Officers have testified that witness descriptions of a crime are often affected by the stress of experiencing or witnessing crime.[53] And numerous studies have shown witnessing crime to be stressful.[54]

Here, the undersigned finds that the description for a surveillance system monitor is at odds with the ALJ's RFC that precluded work at more than a low stress level. The undersigned therefore finds that the ALJ's decision at step five of the analysis is not supported by substantial evidence and this portion of the ALJ's decision should be remanded to allow the ALJ to address the apparent conflict between Plaintiff's abilities and the occupational requirements of a surveillance system monitor.[55] In short a reasonable mind would not accept the contradiction between the ALJ's RFC and the VE's testimony of the occupations identified as available in the national economy.[56]

## REPORT AND RECOMMENDATION

For the reasons set forth above the undersigned RECOMMENDS that this case be remanded to the Commissioner for further findings.

---

[51] Tr. 21.

[52] DOT § 379.367-010

[53] *See e.g., U.S. v. Patterson*, 64 F. App'x 727, 729, 2003 WL 21235470, at *2 (10th Cir. 2003).

[54] *See e.g.,* Valena Elizabeth Beety, What the Brain Saw: The Case of Trayvon Martin and the Need for Eyewitness Identification Reform, 90 Denv. U. L. Rev. 331, 337 (2012).

[55] Upon remand it would also be appropriate to address the other occupations rejected by the Court as contrary to Ms. Losee's RFC.

[56] *See Gossett*, 862 F.2d at 804.

Copies of this report and recommendation are being mailed to all parties who are hereby notified of their right to object.  Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of Court.[57]  Any objection must be filed within this deadline.  Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 16 February 2017.

_____
Brooke C. Wells
United States Magistrate Judge

---

[57] *See* 28 U.S.C. § 636 and Fed. R. Civ. P. 72.